UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD PENA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-23-CV-1542-FB (HJB) |
| | § | |
| CITY OF SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment (Docket Entry 28) filed by Defendant the City of San Antonio ("the City").  Pretrial matters have been referred to the undersigned for consideration.  (Docket Entry 4.)  For the reasons set out below, I recommend that Defendant's motion (Docket Entry 28) be **GRANTED**.

## I.      Jurisdiction.

In this employment dispute, Plaintiff asserts claims of discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2–3, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a) and (d).  The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331.  I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

## II.     Background.

From 2005 until his termination in 2023, Plaintiff was employed as a maintenance worker in the City's Parks and Recreation Department.  (Docket Entry 31-28, at 2.)  Plaintiff is a 78-year-old Mexican-American man.  (*See* Docket Entry 31-28, at 2.)  He claims that, during his tenure as

a city employee, he was subjected to disparate treatment and a hostile work environment on account of his age, race, and national origin, in violation of Title VII and the ADEA's anti-discrimination provisions. (Docket Entry 1, at 16–17.) He further claims that he was penalized, and ultimately terminated, for complaining about the alleged discrimination, in violation of Title VII and the ADEA's anti-retaliation provisions. (*Id.* at 17.)

Plaintiff filed a charge of discrimination based on his race and national origin with the EEOC on March 11, 2023. (*See* Docket Entry Docket Entry 28-9, at 2; Docket Entry 31-21, at 2.) He filed a second EEOC charge on May 23, 2023, adding claims for age-based discrimination and retaliation. (*See* Docket Entry 28-11, at 2; Docket Entry 31-20, at 16–17.) Plaintiff received his right-to-sue letter from the EEOC on September 23, 2023, and filed suit 88 days later, on December 20, 2023. (Docket Entry 1.) On August 19, 2025, two months after the close of discovery, the City moved for summary judgment on all of Plaintiff's claims. (Docket Entry 28.) Plaintiff has filed a response in opposition to the motion (Docket Entry 31), to which the City has replied (Docket Entry 37).

### III.    Summary Judgment Standard.[1]

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Hayes v. Locke Supply Co.*, 724 F. Supp. 3d 609, 612 (E.D. Tex. 2024) (citing

---

[1] In its motion, the City alternatively asks for a judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (*See* Docket Entry 28.) Although the City's motion challenges the sufficiency of Plaintiff's pleadings as to some causes of action, "when [the City] has also submitted a motion for summary judgment and discovery is complete," it would be "improper to render a final decision based on the sufficiency of Plaintiff's pleadings rather than the merit of [his] claims." *Christian Heritage Sch. v. Cent. Mut. Ins. Co.*, No. 6:24-cv-45-JDK-JDL, 2025 WL 1337539, at *2 (E.D. Tex. Jan. 29, 2025), *report and recommendation adopted*, No. 6:24-cv-45-JDK-JDL, 2025 WL 1337537 (E.D. Tex. Feb. 14, 2025). Additionally, Plaintiff has specifically treated the City's motion as one for summary judgment (*see* Docket Entry 31, at 1 ("Genuine disputes of material fact exist. . . .")), and he attached more than 120 pages of exhibits

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A disputed fact is material when it "might affect the outcome of the [claim or defense] under the governing law."  *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Allen*, 63 F.4th at 300 (quoting *Anderson*, 477 U.S. at 248).  The genuineness of a dispute is viewed "through the prism of the substantive evidentiary burden, . . . . bear[ing] in mind the actual quantum and quality of proof necessary to support liability."  *Anderson*, 477 U.S. at 254.

The moving party "always bears the initial burden of informing the . . . court of the basis for its motion and identifying the record evidence which it believes demonstrates the absence of a genuine issue of material fact."  *Martin v. Petty*, 699 F. Supp. 3d 547, 555 (S.D. Tex. 2023) (Rosenthal, J.) (quoting *Celotex*, 477 U.S. at 323) (citation modified).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)).  When the nonmovant bears the burden of proof at trial, as in this case, the moving party "may merely point to the absence of evidence and thereby shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial."  *Martin*, 699 F. Supp. 3d at 555 (quoting *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)) (citation modified).

---

to his response. Accordingly, the Court may simply treat the City's motion as one for summary judgment without addressing Rule 12(c).

If the movant meets its burden, "the nonmovant must come forward with specific facts showing a genuine factual issue for trial." *Martin*, 699 F. Supp. 3d at 555 (quoting *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021)) (citation modified).  The nonmovant "must identify specific evidence in the record and articulate the precise manner in which the evidence aids their case." *Martin*, 699 F. Supp. 3d at 555 (quoting *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021)) (citation modified).  The nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Martin*, 699 F. Supp. 3d at 555 (quoting *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021)) (citation modified).

When addressing a motion for summary judgment, the Court need only consider the parties' cited materials.  FED. R. CIV. P. 56(c)(3).  "[I]t is not the trial court's obligation to sift through the record in search of evidence to support a party's claims; instead, it is the party's burden to identify specific evidence in the record, and to articulate the precise manner in which that evidence support[s] its claim." *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 443 (5th Cir. 2024) (citation modified); *see Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (holding that deposition "was never made part of the competent summary judgment record" because nonmovant "failed to designate, or in any way refer to, the deposition as the source of [its] factual support").

The Court "may not make credibility determinations or weigh the evidence" when considering whether summary judgment is appropriate. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Instead, "facts that are subject to genuine dispute are viewed in the light most favorable to [the nonmovant]," *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743,

4

749–50 (5th Cir. 2023), and the Court "construe[s] all reasonable inferences in [the nonmovant's] favor," *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

## IV.    Discussion.

As previously mentioned, Plaintiff asserts discrimination and retaliation claims under Title VII and the ADEA.  (*See* Docket Entry 1, at 16–17.)  This Report and Recommendation addresses the discrimination claims first, beginning with Title VII.

### A.  *Title VII Discrimination Claims.*

Plaintiff raises both disparate-treatment and hostile-work-environment claims under Title VII.  Each claim is addressed below.

#### 1.  *Disparate treatment.*

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as . . . practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Plaintiff asserts a claim of disparate treatment based on his Hispanic national origin.  (*See* Docket Entry 1, at 16.)

As it "relies entirely on circumstantial evidence," Plaintiff's disparate treatment claim is "subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [(1973)]." *Alkhawaldeh v. Down Chem. Co.*, 851 F.3d 422, 426 (2017).  Under that framework, Plaintiff has the "initial burden . . . to produce evidence that he: (1) is a member of a protected class, (2) was qualified for the position that he held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of his protected class." *Id.*  If Plaintiff makes out such a prima facie case, then the burden shifts to the City "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.*

If the City does so, then "the burden shifts back" to Plaintiff, who must demonstrate that the City's "proffered reason is a pretext for discrimination." *Id.* (citation modified). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citation modified).

Here, Plaintiff's claim fails at the prima-facie-case stage of the inquiry. Specifically, he has produced no evidence to satisfy the "similarly situated" prong of his prima facie case. To satisfy this requirement, Plaintiff must "identify at least one coworker outside of his protected class who was treated more favorably under nearly identical circumstances." *Alkhawaldeh*, 851 F.3d at 426 (citation modified). "The coworker, known as a comparator, must hold the same job or hold the same job responsibilities" as Plaintiff, and "must share the same supervisor or have his employment status determined by the same person" as Plaintiff, and they "must have a history of violations or infringements similar to that of" Plaintiff. *Id.* (citation modified); *see Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 735 (S.D. Tex. 2014) ("Similarly situated individuals must be 'nearly identical' and must fall outside the plaintiff's protective class.") (quoting *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

In his response to the City's motion, Plaintiff provides no evidence of non-Hispanic co-workers with the same supervisor who were not reprimanded after engaging in the conduct similar to that for which Plaintiff was reprimanded.[2] The most Plaintiff offers are conclusory assertions that "other similarly situated employees outside his protected class were treated more favorably"

---

[2] The specific conduct that led to the reprimand is discussed in more detail in Part IV(C), *infra*.

and "were not disciplined as many times." (Docket Entry 31, at 20, 30.) Such conclusory assertions are insufficient. *Jones*, 8 F.4th at 368.

Plaintiff also incorrectly argues that it is actually the City's burden to identify similarly situated employees outside of his protected class and to demonstrate why they were not treated more favorably. (*See* Docket Entry 31, at 37–38.) Contrary to this argument, "the initial burden rests with the employee to produce evidence that he . . . was treated less favorably than others similarly situated outside of his protected class." *Alkhawaldeh*, 851 F.3d at 426. To meet this burden, the employee is required "to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Id.* As Plaintiff has offered no comparator evidence at all, he has failed to meet his initial burden, and he cannot make out a prima facie case of disparate treatment under Title VII. The City therefore is entitled to summary judgment on that claim.

### 2. *Hostile work environment.*

"In addition to protecting employees from race, sex, and national origin discrimination in the workplace, Title VII also makes it unlawful for employers to require people to work in a discriminatorily hostile or abusive environment." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432 (5th Cir. 2022) (citation modified); *see E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc) ("The creation of a hostile work environment through harassment is a form of proscribed discrimination.") (citation modified).

To survive summary judgment on his hostile-work-environment claim, Plaintiff must produce evidence from which a reasonable jury could find that "(1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and

(5) the [City] knew or should have known about the harassment and failed to take prompt remedial action." *Wantou*, 23 F.4th at 433 (citation modified); *see Abbt v. City of Hous.*, 28 F.4th 601, 607 (5th Cir. 2022) (same).

"A work environment is considered hostile when it is objectively and subjectively offensive," which means both "that a reasonable person would find it hostile or abusive," and also that "the victim [him]self perceived it to be so." *Abbt*, 28 F.4th at 607 (citation modified). "The hostility of a given work environment is determined based on the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation modified). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Wantou*, 23 F.4th at 433 (citation modified).

In his complaint, Plaintiff alleges three grounds for his hostile-work-environment claim: (1) that he endured "constant and daily ridicule by his co-workers calling him a 'wetback' and '*pandejo*' [sic] (stupid)," (2) that he was "segregated" and "never assigned a co-worker to assist him," and (3) that his supervisor engaged "in favoritism." (Docket Entry 1, at 4.) Only the first of these allegations could even potentially support a claim of hostile work environment. And on that allegation, Plaintiff has not presented sufficient evidence to withstand summary judgment.

In his response to the City's motion, Plaintiff attaches his own affidavit and those of former coworkers Robert Tharalson and Richard Garcia. (*See* Docket Entry 31-26–28.) None of the affidavits, however, support an inference that Plaintiff was harassed "based on his membership in a protected class"—an essential element of his claim. *See Wantou*, 23 F.4th at 433.

The most Plaintiff offers in his affidavit to substantiate the allegation in his complaint is the single conclusory statement that he told his supervisor he was "being subjected to daily and frequent racial slurs by other maintenance workers." (*Id.* at 6.) But Plaintiff "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Martin*, 699 F. Supp. 3d at 555 (quotes *Jones*, 8 F.4th at 368).

The affidavits from Plaintiff's former co-workers fare no better. According to Richard Garcia, Plaintiff's co-workers would "congregate while [Plaintiff] was performing and completing a work task . . . and observe [Plaintiff] in an attempt to cause an inconvenience." (Docket Entry 31-27, at 2.) Garcia further avers that Plaintiff's co-workers would "follow [him] and would monitor his whereabouts and examine his work performance with ill intensions of finding any errors and creating a hostile work environment for[him]." (*Id.*) Robert Tharalson's states that Plaintiff's crew leaders, "Jarmillo, Gomez, and Guzman . . . were consistently targeting [Plaintiff] . . . . direct[ing] [his] co-workers to see whether [he] was not doing his job and to report it to them immediately." (Docket Entry 31-26, at 2.) He also states that he overhead "some of the crew make fun of [Plaintiff] all the time." (*Id.*) Even if this were evidence that Plaintiff was harassed,[3] nothing in the co-worker affidavits suggests that the described monitoring or teasing was "based on his membership in a protected class." *Wantou*, 23 F.4th at 433.[4]

---

[3] The Court should note that "careful monitoring of an employee's job performance, absent any other evidence of prohibited discrimination, does not suffice to support a claim for hostile work environment." *Gonzales v. Wells Fargo Bank, NA*, No. 5:16-CV-39-DAE, 2017 WL 10754454, at *8 (W.D. Tex. Oct. 19, 2017), *aff'd sub nom. Gonzales v. Wells Fargo Bank, Nat'l Ass'n*, 733 F. App'x 795 (5th Cir. 2018).

[4] In his own affidavit Plaintiff states that his supervisor "engage[d] in favoritism with the Crew Leaders who were mainly Hispanic"—*i.e.*, that any favoritism she allegedly engaged in was directed at members of the same protected class as Plaintiff. (Docket Entry 31-28, at 2 (emphasis added).)

Because Plaintiff has presented no evidence to raise a genuine dispute as to an essential element of his hostile-environment claim, the City is entitled to summary judgment on that claim.

**B.  *ADEA Discrimination Claims*.**

1.  *Disparate treatment*.

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  "When a plaintiff alleges disparate treatment," as in this case, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).

As with Title VII claims, "[t]he *McDonnell Douglas* framework also applies to claims of disparate treatment under the ADEA."  *Fife v. Vicksburg Healthcare, LLC*, 945 F. Supp. 2d 721, 732 (S.D. Miss. 2013) (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).  To make out a prima facie case of age discrimination, a plaintiff must "prove: (1) they are within the protected class [over 40 years old]; (2) they are qualified for the position; (3) they suffered an adverse employment decision; and (4) they were replaced by someone younger or treated less favorably than similarly situated younger employees."  *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003), *aff'd on other grounds*, 544 U.S. 228 (2005).

Plaintiff has failed to establish the fourth element of his prima facie case.  "To establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another [younger] employee under nearly identical circumstances."  *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 787 (S.D. Tex. 2014).  In other words, Plaintiff "must present comparator employees of sufficient similitude."  *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 (5th Cir. 2015).  As with his Title VII claim of disparate treatment, Plaintiff's ADEA claim fails

because he has presented no evidence of any comparator employee who was younger than he was and treated more favorably under virtually identical circumstances.  *See, e.g.*, *Lindsey v. United Parcel Serv., Inc.*, No. 3:16-CV-3485-S, 2019 WL 3239479, at \*5 (N.D. Tex. July 17, 2019) (granting summary judgment where ADEA claimant "d[id] not provide a single example of a younger employee being treated more favorably"); *Jefferson v. Hosp. Partners of Am., Inc.*, No. H-08-1535, 2009 WL 8758090, at \*13 (S.D. Tex. May 18, 2009) (granting summary judgment on ADEA claims that were "unfounded and without merit" as there was "no evidence in the summary judgment record that . . . younger employees in nearly identical circumstances" were treated more favorably), *aff'd sub nom. Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485 (5th Cir. 2010). The City therefore is entitled to summary judgment on Plaintiff's ADEA disparate treatment claim.

2.    *Hostile work environment.*

Plaintiff also raises an ADEA hostile-work-environment claim.  *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (recognizing such claims in the Fifth Circuit). As with all other ADEA claims, a hostile-work-environment claim is subject to the *McDonnell Douglas* burden-shifting framework, beginning with the plaintiff's requirement of proving a prima facie case.  *See id.*  To make out a prima facie case of a hostile work environment based on age under the ADEA, Plaintiff must produce evidence showing that "(1) he was over the age of 40; (2) . . . was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer."  *Id.*

Plaintiff has failed to make out a prima facie case of a hostile work environment under the ADEA for the same reasons he failed to do so under Title VII: a lack of evidence that he was harassed based on a statutorily protected characteristic.  The only evidence of harassment that

11

Plaintiff has produced—affidavits from himself, Richard Garcia, and Robert Tharalson—is devoid of logical connection to Plaintiff's age.  Garcia and Tharalson's affidavits simply state that Plaintiff was monitored by co-workers; while Tharalson also states that he overhead "some of the crew make fun of [Plaintiff] all the time" (Docket Entry 31-26, at 2), he makes no mention of age and offers no specific details as to what was said.  *See Martin*, 699 F. Supp. 3d at 555 ("A nonmovant cannot defeat summary judgment with conclusory allegations.") (citation modified).  As Plaintiff has failed to make out a prima facie case of a hostile work environment under the ADEA, the City is also entitled to summary judgment on that claim.

### C.  *Title VII and ADEA Retaliation Claims.*

"The antiretaliation provision of Title VII prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576–77 (5th Cir. 2020) (citation modified); *see* 42 U.S.C. § 2000e-3(a). Similarly, "[t]he ADEA makes it unlawful for an employer to discriminate, or retaliate, against an employee because such individual has opposed any practice made unlawful by the Act." *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 869 (5th Cir. 2016) (citation modified).

Retaliation claims under either statute are subject to the *McDonnell Douglas* "burden-shifting analysis at the summary judgment stage, starting with the prima facie case." *Heggemeier*, 826 F.3d at 869.  And the prima facie case is the same under either statute, requiring Plaintiff to show that "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 508 (5th Cir. 2024); *Heggemeier*, 826

12

F.3d at 869.  Once Plaintiff makes a prima facie case, the burden shifts to the City "to provide a legitimate, non-discriminatory reason for the adverse employment action."  *Brown*, 969 F.3d at 577.  And if the City provides such a reason, the burden returns to Plaintiff "to prove that the proffered reason is pretextual."  *Id.*

In his complaint, Plaintiff alleged myriad instances of retaliation:

- receiving a written reprimand on February 7, 2022, for showing up for work during inclement weather (*see* Docket Entry 1, at 5; Docket Entry 28-3, at 62);

- being subjected to a fitness-for-duty examination after showing up for work on August 8, 2022, smelling like feces (*see* Docket Entry 1, at 5,–7; Docket Entry 28-3, at 66; Docket Entry 28-6, at 2);

- being subjected to a drug test on August 22, 2022 (*see* Docket Entry 1, at 7; Docket Entry 28-13, at 3);

- receiving a letter regarding accrued leave from Victor Mancha, Human Resources Administrator, on November 10, 2022, after he complained about discrimination to his supervisors in August and September of 2022 (*see* Docket Entry 1, at 7; Docket Entry 28-3, at 66);

- receiving a written reprimand on November 28, 2022, for losing a set of keys (*see* Docket Entry 1, at 8; Docket Entry 28-6, at 3, 5–5);

- being placed on an Employee Success Plan ("ESP") on January 18, 2023 (*see* Docket Entry 1, at 10; Docket Entry 28-4, at 3, 14–15);

- receiving a two-day suspension on January 27, 2023, for damaging bathroom counters by improperly cleaning them (*see* Docket Entry 1, at 9; Docket Entry 28-6, at  3, 7–9); and

- being terminated on April 7, 2023, for sleeping on the job during his ESP and the other recent misconduct described above (*see* Docket Entry 1, at 12; Docket Entry 28-5, at 3, 7–10).

As to the first four incidents, the City correctly argues that Plaintiff failed to exhaust administrative remedies.  "Before filing a Title VII . . . claim in federal court, a plaintiff must first exhaust their administrative remedies."  *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 421 (W.D. Tex. 2025).  "This requires filing a timely charge with the appropriate administrative

agency and obtaining a right-to-sue letter." *Id.* "Under Title VII, a charge must typically be filed with the EEOC within 180 days of the 'alleged unlawful employment practice.'" *Id.* (quoting 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his first EEOC charge on March 11, 2023. (*See* Docket Entry Docket Entry 28-9, at 2; Docket Entry 31-21, at 2.) And he did not allege retaliation until his second EEOC charge, which was filed more than two months later, on May 23, 2023. (*See* Docket Entry 28-11, at 2; Docket Entry 31-20, at 16–17.) As this falls more than 180 days after any of the first four incidents, those incidents cannot form a basis for his retaliation claim. The remaining four incidents are discussed below.

  1. *The November 28, 2022, reprimand.*

  Plaintiff's retaliation claims based on his November 28, 2022, written reprimand fails at the prima-facie case stage, because he has produced insufficient evidence that the reprimand amounted to adverse employment action. An action taken by an employer is not adverse unless it "causes the plaintiff a non-*de minimis* injury." *Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.*, No. SA-21-CV-1234-XR, 2024 WL 1055120, at \*12 (W.D. Tex. Mar. 11, 2024) (citing *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023)). Under this standard, "written reprimands . . . and other corrective or remedial measures do not constitute adverse employment actions unless they 'affect job title, grade, hours, salary, or benefits[,] or cause a diminution in prestige or change in standing among coworkers.'" *Flemming*, 2024 WL 1055120, at \*13 (quoting *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at \*7 (5th Cir. Oct. 18, 2023). The City has produced uncontroverted evidence that the written reprimand "had no effect on [Plaintiff's] pay, job duties, benefits[,] or other aspects of his job." (Docket Entry 28-6, at 3.) And Plaintiff has produced no evidence that it resulted in a diminution of his prestige or standing among coworkers. *See Flemming*, 2024 WL 1055120, at \*13. Thus, the November 28, 2022, written reprimand, as a matter of law, was not retaliation.

14

### 2. *Plaintiff's placement on an ESP.*

Plaintiff's retaliation claim based on his ESP placement also fails at the prima-facie case stage. As a matter of law, "remedial training is not an adverse employment action." *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, at *3 (5th Cir. Jan. 5, 2024). And the City has produced uncontroverted evidence that the ESP placement "had no effect on [Plaintiff's job title, pay, hours[,] or benefits." (Docket Entry 28-6, at 3.) Thus, there could be no rational basis for a jury to find that Plaintiff's being placed on an ESP injured him—in any non-*de minimis* way or otherwise. Accordingly, the City did not retaliate against Plaintiff by placing him on the ESP.

### 3. *The January 27, 2023, suspension.*

Plaintiff's two-day suspension on January 27, 2023, cannot support a retaliation claim. Assuming Plaintiff has met his prima-facie case burden,[5] the City has produced evidence that it had a legitimate, non-retaliatory reason for issuing the suspension—namely, that Plaintiff damaged some bathroom countertops by improperly cleaning them on two separate occasions: December 5, 2022, and December 21, 2022, respectively. (*See* Docket Entry 28-4, at 3; Docket Entry 28-5, at 2.) The City's evidence shows that Plaintiff even received remedial training on how to properly clean the countertops after the first improper cleaning, but that he still improperly cleaned them two weeks later. (*See id.*) Plaintiff's only evidence to the contrary is his affidavit, in which he attests that he "did not improperly clean the bathrooms," and that the City provided him with only "Windex and a disinfectant spray." (Docket Entry 31-28, at 4.) Plaintiff's bare assertion that he

---

[5] It is not actually clear whether Plaintiff's suspension amounted to an adverse employment action, as it is unclear whether he was paid during his two-day suspension. *See Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 589 (S.D. Tex. 2015) ("Suspension with pay, followed by reinstatement and no loss of benefits, is not an adverse employment action."). It makes no difference, however, as the Plaintiff has failed to show that the City's proffered reason for the two-day suspension was pretextual.

"did not improperly clean the bathrooms," by itself, is no more than "a scintilla of evidence," and "cannot defeat summary judgment." *Martin*, 699 F. Supp. 3d at 555. As to Plaintiff's allegations regarding Windex, the evidence in the record confirms that "Windex cleaner" was precisely what Plaintiff was told to use, whereas the damage to the countertops was caused by "an oily stainless steel cleaner that was at the facility." (Docket Entry 28-4, at 3.) Thus, the fact that Plaintiff was given Windex and disinfectant spray is not evidence that he did not improperly use the stainless steel cleaner stocked at the facility itself.

Since Plaintiff has produced insufficient evidence that the City's explanation for the suspension was a pretext for retaliation, any claim predicated on that suspension cannot survive summary judgment.

    4.  *Plaintiff's termination.*

Lastly, Plaintiff claims that his April 7, 2023, termination was retaliation for his filing his March 11, 2023, charge of discrimination with the EEOC. (Docket Entry 1, at 12–13; *see* Docket Entry 28-9, at 2; Docket Entry 31-21, at 2.) Filing an EEOC charge is protected activity and termination of employment is an adverse employment action. *See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) ("The filing of an EEOC charge constitutes protected activity."); *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 700 (5th Cir. 2014) ("[Plaintiffs] suffered an adverse employment action—namely, termination."). And the close proximity between Plaintiff's first EEOC charge and his termination—27 days—suffices at the prima-facie case stage to show a causal connection between the two. *See Brown*, 969 F.3d at 577 ("At the prima facie case stage, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.") (citation

modified); *id.* at 578 (explaining that even "two-and-a-half months" is "close enough to show a causal connection").

Because Plaintiff has made out a prima facie case of Title VII[6] retaliation based on his termination, the burden shifts to the City to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Brown*, 969 F.3d at 577. The City has done so. The undisputed summary judgment evidence shows that the reasons given for Plaintiff's termination were a combination of (1) a March 16, 2023, complaint by three of Plaintiff's co-workers, corroborated by photographic evidence, that Plaintiff was sleeping on duty, (2) Plaintiff's February 7, 2022, written reprimand for failing to follow instructions by coming into work during inclement weather; (3) his November 28, 2022, written reprimand for losing a set of keys; and (4) his two-day suspension, on January 27, 2023, for improperly cleaning, and damaging, bathroom countertops. (*See* Docket Entry 28-5, at 3, 7, 10.)

As the City has met its burden to articulate legitimate reasons for Plaintiff's termination, the burden shifts back to Plaintiff to produce evidence from which a reasonable jury could conclude that the proffered reasons were pretextual. *Brown*, 969 F.3d at 577. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719

---

[6] Although Plaintiff has made out a prima facie case of retaliation, he has done so only under Title VII—not the ADEA. Plaintiff did not complain of age discrimination to the EEOC until May 23, 2023—*i.e.*, after he had already been terminated. (*See* Docket Entry 28-11, at 2; Docket Entry 31-20, at 16–17.) Thus, his termination could not have been retaliation for his engaging in protected activity under the ADEA. *See Normore v. Dall. Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 531 (N.D. Tex. 2023) ("An employer cannot retaliate against an employee if [it] . . . did not know that the employee had engaged in protected activity at the time of the alleged retaliatory actions."). Accordingly, the City is entitled to summary judgment on Plaintiff's ADEA retaliation claim.

F.3d 356, 363 (5th Cir. 2013).  Ultimately, in order to survive a motion for summary judgment, Plaintiff must show a conflict in substantial evidence on the question of whether the City would not have terminated him but for his protected activity.  *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Musser*, 944 F.3d at 561– 62 (citation modified).

Plaintiff challenges each of the City's four proffered reasons for termination as pretextual. As to the second, third, and fourth reasons—the reprimands for failing to follow instructions by coming into work during inclement weather and for losing a set of keys, and his suspension for damaging countertops—Plaintiff has claimed that these actions were themselves retaliatory.  (*See* Docket Entry 1, at 5, 7, 9.)  This Report and Recommendation did not address the merits of the reprimands above as they were not exhausted, but the suspension was not pretextual for the reasons discussed above.  And that lack of pretext raises significant doubt as to whether Plaintiff can show that retaliation was the but-for reason for his termination, particularly in light of the fact that, when Plaintiff received the suspension, he was specifically warned that "[c]ontinued poor work performance, misconduct[,] or other rule violations" could result in additional discipline "up to and including termination." (Docket Entry 28-6, at 9.)

This leaves the primary reason proffered for Plaintiff's termination—his alleged sleeping on duty on March 16, 2023, less than two months after he had received his suspension and warning. To rebut this proffered explanation, Plaintiff points to a decision issued by the Texas Workforce Commission ("TWC"), ultimately finding that there was insufficient evidence to conclude that

Plaintiff was sleeping on duty on March 16, 2023.  (*See* Docket Entry 31-25, at 5.)  The City vehemently argues that TWC findings and conclusions may not be used as evidence.  (Docket Entry 37, at 16–17 (citing, *inter alia*, *Williams v. Avialli Serv. Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003).)  And in any event, it is far from clear that, even if the evidence of Plaintiff's sleeping on the job were inconclusive, this would amount to substantial evidence in satisfaction of the but-for standard of causation; after all, "Title VII provides no protection from arbitrary or even erroneous personnel decisions, only those unlawfully motivated."  *Moore v. Potter*, 716 F. Supp. 2d 524, 536 (S.D. Tex. 2008).

However, Plaintiff's claim as to his termination fails for a more fundamental reason.  It is undisputed that the decision to terminate Plaintiff's employment was made solely by Homer Garcia III, the Director of the Parks and Recreation Department.  (*See* Docket Entry 28-5, at 2.)  And in his deposition, Plaintiff confirmed that he ascribed no retaliatory motive to Garcia.  (*See* Docket Entry 28-2, at 19–20 (affirmatively denying that Garcia, "[i]n any way, . . . was retaliating against [Plaintiff] for something [he] had filed previously").)  If the decisionmaker directly responsible for the adverse employment action did not act out of retaliatory animus, an employee must proceed under a "cat's paw" theory of liability, proving that (1) his supervisor, motivated by retaliatory animus, took action intended to cause an adverse employment action; and (2) that action was the but-for cause of the adverse employment action.  *Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015); *Equal Emp. Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 685 (5th Cir. 2017) ("Plaintiffs may use a cat's paw theory to prove causation when they cannot show the official decisionmaker had a retaliatory motive, but can show that another individual influenced that decisionmaker.").

Plaintiff has alleged animus on the part of his supervisor Wendy Leonard, and he speculates in his affidavit that Garcia "appeared" to be "'rubber stamping' whatever Wendy Leonard or others presented [to] him." (Docket Entry 31-28, at 4–5.)  Such speculation is insufficient to withstand summary judgment, especially since the undisputed record evidence shows that it was not Leonard, but Richard Hernandez, the Office of Municipal Integrity Administrator, who conducted the investigation into Plaintiff's sleeping on the job and reported to Garcia.  (*See* Docket Entry 28-7.)  Hernandez concluded that the allegation of Pena sleeping while on duty was "founded" (*id.* at 3), and his findings were reviewed by Garcia, who made the decision to terminate Pena's employment (Docket Entry 28-5, at 3.)  And the competent summary judgment evidence in the record shows that Garcia "did not discuss, consult, or confer with Wendy Leonard regarding [his] decision to terminate [Plaintiff's] employment." (Docket Entry 28-5, at 3; *see* Docket Entry 28-4, at 4.)  In such circumstances, Plaintiff cannot show retaliatory animus even under a "cat's paw" theory, and the City is entitled to summary judgment.

## V.    Conclusion and Recommendation.

Based on the foregoing, I recommend that the City's Motion for Summary Judgment (Docket Entry 28) be **GRANTED**, and that this case be **DISMISSED**.

## VI.    Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be

filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on February 10, 2026.

Henry J. Bemporad
United States Magistrate Judge

21